FIRST NATIONAL BANK IN BROOKINGS, Plaintiff and Appellee,

v.

JOHN DEERE COMPANY, Defendant,

and

Sterzinger Implement Company, Defendant and Appellant.

No. 15506.

Supreme Court of South Dakota.

July 22, 1987.

---

Richard J. Helsper, Brookings, for plaintiff and appellee.

Thomas W. Reeves, Hendricks, Minn., for defendant and appellant.

WUEST, Chief Justice.

Appellant implement dealer appeals an order of summary judgment given in favor of Bank as to rights and priorities in secured collateral. We affirm.

Appellee, First National Bank (Bank), of Brookings, South Dakota financed Warren Thompson's (Thompson's) farm operations. In January, 1977, Bank had a perfected security interest in all of Thompson's current and after-acquired farm equipment. In 1982, Bank continued the financing statements.

In January, 1980, Thompson purchased a new John Deere 4440 tractor and acquired financing through the John Deere Company (John Deere). Appellant seller, Sterzinger Implement Company (Sterzinger), a Minnesota company, filed a financing statement on the 4440 tractor with the Register of Deeds for Brookings County on February 7, 1980. The financing statement listed John Deere as an assignee of the secured party (Sterzinger).

In February, 1984, Thompson purchased a used John Deere 8430 tractor and a used Farmhand 12-row cultivator and acquired financing through John Deere. Sterzinger assigned its interest to John Deere. John Deere perfected its security interest in the 8430 tractor with the Register of Deeds for Brookings County on March 1, 1984. The financing statement did not, however, list the 12-row cultivator as secured collateral. In addition, the financing statement reserved the 4440 tractor as additional security, but at the time of the 1984 sale, the balance due on the 4440 tractor had already been paid in full.

Thompson defaulted on payments for the 8430 tractor and 12-row cultivator. Under its dealership agreement, Sterzinger was required to repossess equipment for John Deere. At the direction of John Deere, on or about May 6, 1985, Sterzinger repossessed the 8430 tractor, the cultivator, and the 4440 tractor. Sterzinger transported the equipment to its dealers lot in Canby, Minnesota. Bank learned of this action on May 21, 1985, and contacted John Deere and Sterzinger asserting its rights to the 4440 tractor and the cultivator.

Sterzinger's dealership agreement with John Deere also obligated the dealer to repurchase repossessed equipment from John Deere. Sterzinger offered to purchase John Deere's interest in the equipment on May 28, 1985. Although it is not clear when such purchase actually occurred, by September 6, 1985, John Deere had assigned its rights to Sterzinger. John Deere recorded a financing statement with the Brookings County Register of Deeds on September 6, 1985, noting the assignment to Sterzinger.

Bank brought an action against John Deere and Sterzinger for replevin and conversion on December 31, 1985. The parties each entered separate motions for summary judgment. The trial court dismissed John Deere from the lawsuit since it had assigned its interest to Sterzinger. The court then awarded the 4440 tractor and 12-row cultivator to Bank and the 8430

tractor to Sterzinger. Sterzinger appeals, arguing that Bank lost priority when it failed to refile in Minnesota.

Sterzinger argues the Bank became unperfected when it failed to file in Minnesota within four months of repossession by John Deere, thereby giving Sterzinger possession priority to the 4440 tractor and 12–row cultivator under 9–305. The "four-month rule" is found in section 9–103(1)(d) of the Uniform Commercial Code, and the subsection is applicable in South Dakota and Minnesota. *See* SDCL 57A–9–103(1)(d): MINN.STAT. § 336.9–103(1)(d).

Section 9–103(1)(d) states:

When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by Part 3 of this Article to perfect the security interest,

(i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is therefore deemed to have been unperfected as against a person who became a purchaser after removal[.]

Since "this state" in section 9–103(1)(d) is the State of Minnesota, the issue then is whether Minnesota's counterpart to U.C.C. § 9–103(1)(d)(i) applies so as to change the relative priorities of the parties when, as in this case, both opposing creditors are perfected in the first state, but the collateral is taken to another state by the creditor who is located in that other state.

■ The Uniform Commercial Code should be liberally construed and applied to promote its underlying purposes and policies. *See* U.C.C. Section 1–102. Given the circumstances of this case, a close analysis of the purposes behind the four-month rule and the positions held by these parties is necessary. Applying this rule without such consideration could lead to a result not contemplated by the drafters of the Code.

■ The four-month grace period for continuation of perfection of a security interest in incoming goods was designed to protect creditors from absconding *debtors*. *See In re Automated Bookbinding Services, Inc.*, 471 F.2d 546 (4th Cir.1972); *Rental Electronics, Inc. v. SSC Corp.*, 27 U.C. C.Rep.Serv. 828 (DC Utah, 1979). The intent of 9–103(1)(d) is to cover collateral brought into the second state. A secured party is allowed four months to find the debtor or collateral and to file in the new state. *See* 9–103(1)(d); 9–103(3)(e).

Here, there was no absconding debtor involved in the removal, and no new value was given to an absconding debtor by a subsequent creditor. The facts in this case do not fit the familiar patterns of removal and subsequent purchase that the protection of the four-month rule was meant to cover.

■ We do not believe the local filing requirement in MINN.STAT. § 336.9–103(1)(d) was designed to govern in this case or intended to protect a party like Sterzinger, who was not an innocent third-party purchaser after removal, but was instead an original seller and secured party located in another state who was involved before removal and who removed the collateral from the original state. John Deere and Sterzinger were already perfected in South Dakota, and their removal of the collateral across state lines merely placed Bank's perfected security interest in jeopardy.

The policy behind the four-month rule has been well stated:

The fact that failing to act to preserve perfection makes the security interest "unperfected as against a person who becomes a purchaser after removal," indicates that protection of third persons in the second state is the objective. Manifestly, notice to them requires a filing in the second state as it would be unreasonable and impractical to charge them with knowledge of a filing in the first state, particularly when in many instances the third person in the second state would have no knowledge of the origin of the goods in the first state.

Anderson, Uniform Commercial Code, 9–103:37 (1985).

In this case, the parties to the equipment sale understood the collateral would be kept in South Dakota. Before John Deere approved financing of the 8430 tractor and the cultivator, the company returned a first request for financing unapproved with instructions for Sterzinger to get a release from any blanket mortgage held by Thompson's local lender before financing would be approved. The record shows Thompson informed Sterzinger that Bank had granted such a release, but there is no evidence that a release was actually given. Thus John Deere and Sterzinger had actual knowledge of Bank's security interest at the time the equipment was sold in 1984 and well before the date of removal on May 6, 1985.

Bank contacted both Sterzinger and John Deere and asserted its claim sometime shortly after May 21, 1985, and before Bank had turned the matter over to its attorney on June 7, 1985. We believe it is significant that the bank asserted its rights within four months of removal.

> As long as the out-of-state secured party asserts his security interest before the four-month period expires, he should not have to refile in order to win. In this setting it makes sense to freeze the relative priorities inside the four-month period because that is when the conflict quickens. Thereafter, all that remains are settlement negotiations or trial. A refiling would add nothing.... Finally, the secured party should win against a non-ordinary course buyer if he asserted his rights within the four-month period.

J. White & R. Summers, Uniform Commercial Code § 23–18 (2d Ed.1980); *Compare United States v. Handy and Harman,* 750 F.2d 777 (9th Cir.1984) ("asserting interest" implies bringing suit within the four-month period).

Bank asserted its interest in the collateral and should not have been required to file in order to maintain its position against the removing creditors. The Bank asserted its interest in the collateral within a month of removal, and we cannot see where filing should have been necessary under the circumstances when all that remained was a settlement or a trial to sort out the relative priorities of the secured parties as they existed when Bank asserted its claims to removed collateral.

Thus, we hold that Minnesota's statute does not apply to defeat Bank's interest in any of the collateral. Bank retained its perfected security interest under the after-acquired property clause. The policy behind the four-month rule, as well as the knowledge and special position held by Sterzinger lead us to this result. Priority, then, depends upon the security interests held by the parties prior to removal.

■ Sterzinger had a purchase money security interest in the 4440 tractor that lapsed when final payment was received.

> A security interest is a "purchase money security interest" to the extent that it is (a) taken or retained by the seller of the collateral to secure all or part of its price; ...

Section 9–107.

"A purchase money security interest in collateral other than inventory has priority over a conflicting security interest in the same collateral...." Section 9–312(4). Thus, a purchase money obligation has priority over an interest acquired under an after-acquired property clause. U.C.C. § 9–107, Comment 1; U.C.C. § 9–204, Comment 1.

In this case, when Sterzinger reserved the 4440 tractor as additional collateral for the 8430 purchase, Sterzinger no longer had purchase money security interest. As for the 8430 tractor, Sterzinger retained its purchase money security interest priority. Bank kept priority rights for the cultivator since Sterzinger did not perfect its security interest in the cultivator.

Judgment affirmed.

MORGAN, SABERS, and MILLER, JJ., concur.

HENDERSON, J., concurs in result.