**COMMUNITY BANK OF CHILLI-COTHE, Missouri, Appellant,**

v.

**Lester CAMPBELL, Respondent.**

**No. WD 43862.**

Missouri Court of Appeals, Western District.

June 11, 1991.

Motion for Rehearing and/or Transfer to Supreme Court Denied July 30, 1991.

Application to Transfer Denied Sept. 10, 1991.

Allan Brent Turner, Chillicothe, for appellant.

Charles R. Willis, St. Louis, for respondent.

Before LOWENSTEIN, P.J., and TURNAGE and FENNER, JJ.

FENNER, Judge.

The Community Bank of Chillicothe, Missouri, (Bank) appeals from a judgment, following a jury trial, in favor of Lester Campbell. Mr. Campbell brought this action for damages arising from a Petition in Replevin and subsequent disposal of certain property by the Bank.

Background facts which led up to Lester Campbell's action herein are as follows:

Billy and Evelyn Campbell are the brother and sister-in-law of Lester Campbell. For approximately 35 years, Lester and Billy conducted a farming operation together and purchased machinery together. They also helped each other on their own respective farms doing such things as planting and harvesting.

Beginning in 1980, and continuing for some time thereafter, the Bank provided Billy and Evelyn Campbell with operating money for the purpose of financing their farming operation. In exchange, Billy and Evelyn provided the Bank with verified financial statements and security agreements.

In January of 1983, Billy and Evelyn Campbell executed a security agreement with the Bank listing certain property as collateral, some of which is the subject of dispute here. Billy and Evelyn Campbell represented that they were the sole owners of the following property which forms the basis of the present dispute:

1. 1—1967 Massey Ferguson Model 1130 Tractor;
2. 1—61 foot Grain Auger;
3. 1—1979 McKee 1500–2000 lb. Hay Baler;
4. 1—1980 Great Plains 20 foot Grain Drill;
5. 1—Mid 70's Massey Ferguson 6–16 inch Semi-mounted plow;
6. 1—1969 Oliver Model 2150 Diesel Tractor with no cab;
7. 1—Used Amco 23 foot fold-up Wheel Disc;
8. 1—1978 IHC 8–row Planter; and
9. 1—Clark 500 gallon sprayer.

Although the precise date does not appear in the record, sometime in 1985 or 1986, Billy and Evelyn Campbell filed a Chapter 11, Bankruptcy Petition, which was subsequently converted to a Chapter 7, liquidation proceeding. The property in issue here was listed on the bankruptcy schedules.

On November 23, 1987, pursuant to a motion filed by the Bank, the Bankruptcy Court granted the Bank leave to proceed with foreclosure or repossession actions with regard to certain property, including, but not limited to, the property in dispute here.

During December, 1987, Billy and Evelyn Campbell received a letter from a lawyer on behalf of the Bank requesting that they assemble the property for recovery. The Campbells apparently took no action in response. On December 29, 1987, the Bank filed its Petition in Replevin. That same day an Order of Delivery in Replevin was entered finding that the Bank had the right to immediate possession of the property in dispute. The Order of Delivery in Replevin directed the Sheriff of Carroll County to take possession of the property and deliver the same to the Bank. On January 5, 1988, a representative from the Bank, assisted by the Carroll County Sheriff's Office, completed recovery of the property, except for the Clark 500 gallon sprayer, which could not be located. Lester and Billy Campbell were present at the time of recovery. According to Lester Campbell, at the time of recovery, he notified the parties present that he had a one-half interest in the property.

On January 15, 1988, Lester Campbell was allowed to intervene in the pending replevin action and filed a counterclaim against the Bank seeking both actual and punitive damages. Lester Campbell asserted that he held a one-half interest in the property in question. In the Bank's answer to Lester Campbell's counterclaim, it denied that Lester Campbell held an interest in the subject property.

On March 25, 1988, the property recovered by the Bank, except the Massey Ferguson Model 1130 tractor, was sold at a public auction. Lester Campbell purchased the Massey Ferguson tractor at the auction.

The cause came on for trial August 2 and 3, 1990. At the close of the evidence, motions for directed verdict were filed by both parties. The trial court sustained, in part, the motion for directed verdict filed by Lester Campbell. At trial, the Bank admitted that Lester Campbell owned a one-half interest in the Massey–Ferguson Model 1130 tractor. As to the Massey–Ferguson

tractor, the trial court sustained the motion for directed verdict, on the liability issue, and apparently submitted a separate instruction on the measure of damages for that item.[1]

A jury verdict was returned in favor of Lester Campbell and damages were assessed at $7,000.00 actual and $25,750.00 punitive. Damages on the Massey–Ferguson Model 1130 tractor were assessed at $0.00 actual and $750.00 punitive. All post-trial motions were overruled. The trial court, on its own motion, amended the verdict with regard to the Massey–Ferguson tractor to reflect $1.00 actual damages.

The Bank raises three points on appeal. In point one, it argues that the trial court erred in submitting the issue of punitive damages to the jury and in subsequently allowing an adverse verdict on that issue because there was no evidence of evil motive or reckless indifference to the rights of Lester Campbell.

█ Review of this issue is guided by the standards set forth for an award of punitive damages, on an action for intentional tort, by the Missouri Supreme Court in *Burnett v. Griffith*, 769 S.W.2d 780, 789 (Mo. banc 1989). As stated therein: "Punitive damages may be awarded for conduct that is outrageous, because of the defendant's evil motive or reckless indifference to the rights of others." In reviewing the submissibility of the issue of punitive damages, the evidence is viewed in the light most favorable to submissibility. *Walker v. Gateway National Bank*, 799 S.W.2d 614, 617 (Mo.App.1990) (citations omitted).

█ Examination of the record reveals that the evidence was insufficient to support the award of punitive damages. Lester Campbell places great emphasis on the fact that the Bank representative was informed, at the time the property was recovered, of his claim to an interest in one-half of the property. He apparently urges this as a basis to support his allegation that the Bank acted wrongfully. Lester Campbell points to the testimony of himself and Billy Campbell that at the time of the levy, they

informed the representative from the Bank of Lester's one-half interest in the property. He also notes the testimony of Billy Campbell's son, Robert, who testified that he informed the Sheriff at the time of the levy of his Uncle Lester's one-half interest in the property.

█ The gist of a suit in replevin is to test the plaintiff's right to possession of chattels and the wrongful detention of the chattels by the defendant. *Sedalia Mercantile Bank & Trust v. Loges Farms*, 740 S.W.2d 188, 198 (Mo.App.1987). Title may incidentally become involved in a replevin action, but property rights in the chattel are but ancillary to the dominant right of possession. *Id.* (citations omitted). Because a replevin suit is designed only to try possessory rights, the property seized under a writ of replevin and delivered to a plaintiff generally remains in custodia legis, with no power on the part of the plaintiff to sell while the suit is pending. *See, Green Hills Production v. R & M Porter Farms*, 716 S.W.2d 296, 298 (Mo.App.1986). However, the property may be sold during the pendency of the suit if it is sold pursuant to a claim of ownership derived from some other source, such as security agreements. *Sedalia Mercantile Bank & Trust*, 740 S.W.2d at 198.

█ The effect of the security agreement here is governed by the provisions of the Uniform Commercial Code (UCC). Title is not the relevant concern where the parties' rights are governed by Article 9 of the UCC relating to secured transactions. *Fricke v. Valley Production Credit Association*, 721 S.W.2d 747, 753 (Mo.App. 1986). The issue is whether the debtor has acquired sufficient rights in the collateral for the security interest to attach. *Id.* The UCC changed Missouri law on this issue. *Id.*

In *Fricke v. Valley Production Credit Association*, the court determined as a matter of law that the debtor had sufficient rights in cattle purchased with the money of a co-adventurer to create a security in-

---

1. The instructions were not provided in the      record on appeal.

terest in the cattle that prevailed over the ownership claim of the co-adventurer.

■ Likewise we find that Billy and Evelyn Campbell had sufficient right to the property in question here to create a security interest in the property in question which security interest prevailed over the claim to possession and control of Lester Campbell.

The Bank filed its action in accordance with the replevin provisions of Rule 99. The replevin order was signed by the circuit judge and adequate security was posted. The court found that the Bank was entitled to possession of the property. None of the defendants in the replevin action, Billy Campbell, Evelyn Campbell or Lester Campbell, after he was allowed to intervene, filed a redelivery bond in accordance with Rule 99.07. There is no dispute that Billy and Evelyn Campbell owned at a minimum a one-half interest in the property and the evidence showed that they had pledged their interest in the property pursuant to security agreements with the Bank. By authority of Billy and Evelyn Campbell's security agreement, the Bank was authorized to sell the property.

The jury, by returning a verdict in favor of Lester Campbell on his claim, obviously found he had an ownership interest in one-half of the property at issue. The Bank was liable to Lester Campbell for the value of his interest in the property. *Sedalia Mercantile Bank & Trust,* 740 S.W.2d at 199. However, because the Bank had the right to take possession of the property pursuant to court order and to sell the property pursuant to the security interest given by Billy and Evelyn Campbell, the Bank's conduct was lawful and cannot be termed as outrageous, such that would warrant an award of punitive damages pursuant to the standards set forth in *Burnett v. Griffith,* 769 S.W.2d at 789. The award of punitive damages was not warranted under the facts and for the foregoing reasons is reversed.

■ In point two, the Bank argues that the trial court erred when it entered judgment against it in the amount of $7,000.00 for actual damages because this amount exceeds Lester Campbell's alleged interest in the reasonable market value of the property at or near the time of its recovery by the Bank.

Initially, it is noted that the Bank's point is woefully deficient with regard to the standards set forth by Rule 84.04(d) which requires the point relied on to state "wherein and why" a given charge of error is erroneous. Point two merely alleges that the verdict was excessive because it exceeds the reasonable market value of the property at or near the time of its recovery. To bolster that allegation, the Bank points to the fact that Lester Campbell admitted he had not had the property appraised at anytime near the date that it was recovered and that he based the value only on his opinion. Additionally, the Bank notes that its agent, who was present at the time of recovery, testified that a large portion of the equipment had flat tires, was frozen to the ground, not shedded and left in the middle of the fields, and was not operational. From this the Bank draws the conclusion that "[t]here is no doubt from the evidence that [Lester Campbell's] opinion as to the value was erroneous."

Aside from the fact that the Bank's point is clearly not in compliance with Rule 84.-04(d), Lester Campbell, as owner of a one-half interest in the property and apparently qualified in the farming field, was allowed to testify as to the reasonable value of the property, to which no rebuttal testimony was offered nor objection posed. The weight and value of his testimony was for the jury to determine. *Barber v. M.F.A. Milling Co.,* 536 S.W.2d 208, 211 (Mo.App. 1976). Furthermore, the trial court will not be convicted of error where there is no objection to the complained of testimony. *Id.*

Point two is denied.

In its final point, the Bank alleges that the trial court erred in allowing an award of punitive damages on the Massey–Ferguson Model 1130 tractor because the jury failed to award actual damages. As a consequence, the Bank alleges that the trial court erred in increasing the actual damages verdict by $1.00.

It is unnecessary to discuss the merits of point three as the disposition of the issue presented in point one is dispositive herein. In point one, it was held that the award of punitive damages was not warranted. For the reasons set forth in point one, the award of punitive damages as to the Massey–Ferguson Model 1130 tractor is likewise reversed.

■ Finally, pursuant to Rule 84.19, Lester Campbell has requested damages against the Bank for frivolous appeal. A frivolous appeal is one presenting no justiciable question and so readily recognizable as devoid of merit on the face of the record that there is little prospect that it can ever succeed. *In Re Estate of Voegele*, 805 S.W.2d 177, 179 (Mo.App.1990).

In light of the relief granted the Bank herein, this appeal is obviously not frivolous. Lester Campbell's request for damages for frivolous appeal is denied.

The awards of punitive damages are reversed. The judgment, in all other respects, is affirmed.

All concur.