In re The JULIEN COMPANY, Debtor.

**TALLAHATCHIE COUNTY BANK, Plaintiff,**

v.

**Jack F. MARLOW, Trustee, Bankers Trust Company, et al., Defendants.**

v.

**L.C. MABUS, James Mabus and Kenny Weeks, Third Party Defendants.**

**Bankruptcy No. 90–20283–B (mjn). Adv. No. 90–0344.**

United States Bankruptcy Court, W.D. Tennessee, W.D.

June 22, 1992.

William J. Landers, Robert E. Orians, Scott T. Beall, Martin, Tate, Morrow & Marston, P.C., Memphis, Tenn., for Bankers Trust Co.

Elder L. Shearon, III, Udelsohn, Blaylock & Marlow, Memphis, Tenn., for Jack F. Marlow, Trustee.

Charles J. Swayze, Jr., James Y. Dale, Greenwood, Miss., for Tallahatchie County Bank and third party defendants.

Julie C. Chinn, Asst. U.S. Trustee., Memphis, Tenn.

## AMENDED SUPPLEMENTAL MEMORANDUM OPINION AND ORDER ON MOTIONS FOR SUMMARY JUDGMENT

WILLIAM H. BROWN, Bankruptcy Judge.

On April 3, 1992, this Court issued its Supplemental Memorandum Opinion and Order on Motions For Summary Judgment, 1992 WL 65723, 1992 Bankr. LEXIS 515 (Bankr.W.D.Tenn.1992), in which the Court did *not* issue a final order. Subsequently, Bankers Trust Company ("BTCo") and the Trustee jointly moved the Court to reconsider and amend its April 3 ruling as it related to the interpretation and application of the Food Security Act, 7 U.S.C. § 1631. In the alternative, the movants sought permission of this Court to file an interlocutory appeal. As to any interlocutory appeal, it is not within the bankruptcy court's jurisdiction to grant such motions. Rather, it is a motion acted upon by the United States District Court for the Western District of Tennessee after filing of a notice of appeal and a motion for leave to appeal under 28 U.S.C. § 158(a). The notice and motion are filed with the clerk of the bankruptcy court, who then transmits those pleadings to the clerk of the district court. *See* F.R.B.P. 8001(b) and 8003.

Interlocutory appeal may or may not be rendered moot by this Court's granting of the movants' request for reconsideration. This Court has considered the memoranda submitted by the parties, the oral arguments, and the Court's April 3, 1992, opinion along with the entire record of this adversary proceeding, and the Court has concluded that its April 3, 1992, opinion should be amended in order to clarify the Court's rationale and rulings and in order

to more clearly delineate the issues remaining for decision. The Court has made changes in its April 3, 1992, opinion, with the result being this amended opinion, which is *not* intended by the Court to be a final order except as to one issue upon which summary judgment will be granted. The Court does not have before it all pleadings or facts necessary to the granting of complete summary judgment; therefore, this amended opinion merely reserves a ruling on the motions for summary judgment, except for the one issue, without prejudice to amended pleadings being filed and further evidence being offered to support the motions for summary judgment.

This proceeding[1] is before the Court on Motion for Partial Summary Judgment filed by the plaintiff, Tallahatchie County Bank ("TCB"), and Cross–Motion for Summary Judgment filed by the defendant, BTCo and joined by the defendant Trustee, Jack F. Marlow.[2] It is important to note that the Trustee in this adversary proceeding has not sought specifically to avoid the lien of TCB.[3] At issue in the present summary judgment motions and the motion for reconsideration is whether TCB holds perfected security interests with priority over BTCo[4] in the 1989 cotton crops and proceeds of the third party defendants. The following constitutes findings of fact and conclusions of law pursuant to F.R.B.P. 7052 and 7056.

The record reflects that the first Motions for Summary Judgment filed by the respective parties were heard on November 25, 1991. This Court ruled orally and found that genuine issues as to material facts precluded the summary judgments sought. *See* Order Denying Motions for Summary Judgment (December 19, 1991). The Court also ordered the parties to simultaneously submit written memoranda, without oral argument, on the following issues:

(1) Whether the Food Security Act of 1985 (codified at 7 U.S.C. § 1631) preempts the operation of Uniform Commercial Code § 9–103(1)(d)(i) [Tenn.Code Annot. § 47–9–103(1)(d)(i) and N.C.Gen.Stat. § 25–9–103(1)(d)(i) ];[5] and, if not,

(2) Whether TCB has lost its priority, perfected security interests in the 1989 cotton crops and proceeds of the third party defendants pursuant to UCC § 9–103(1)(d)(i).

BTCo and TCB filed their memoranda, and the Court issued its April 3, 1992, opinion, as is now modified in this opinion. In the earlier opinion, the Court may not have made clear that it was intending only to address the effect of 7 U.S.C. § 1631 on TCB's and BTCo's security interests. As previously stated, the Court was never asked to determine whether the Trustee may avoid TCB's security interests.[6] Therefore, the Court understands that it is called upon to resolve whether 7 U.S.C. § 1631 preempts UCC § 9–103(1)(d)(i) with respect to the competing priorities between

---

**1.** This proceeding and these motions are "core" pursuant to 28 U.S.C. § 157(b)(2)(A), (K), and (O).

**2.** Trustee for The Julien Company, Jack F. Marlow, has joined in the Motion for Summary Judgment filed by BTCo and relies on the Second Supplemental Memorandum of Law of BTCo filed in support thereof, except that the Trustee does not join in BTCo's assertion that it or any other institutional Lender has a perfected security interest in the cotton collateral in question. *See* Trustee's Notice of Joining Bankers Trust Company's Motion for Summary Judgment (January 27, 1992).

**3.** Although the Court is not ruling upon whether the Trustee has filed or may file an avoidance complaint against TCB, the Court notes that 11 U.S.C. § 546(a) imposes a statute of limitations which may have expired in this case.

**4.** In an Order entered March 4, 1992, Bankers Trust Company was substituted in the place of and assumed all the rights and obligations of defendants: Amsterdam–Rotterdam Bank, N.V.; Bank Mees & Hope, N.V.; French American Banking Corporation; Team Bank; and Bayerische Vereinsbank, AG (Union Bank of Bavaria) New York Branch in this adversary proceeding.

**5.** Tenn.Code Annot. § 47–9–103(1)(d)(i) and N.C.Gen.Stat. § 25–9–103(1)(d)(i) are the respective state's applicable versions of UCC § 9–103(1)(d)(i). For purposes of this opinion, the Uniform Commercial Code will be the only state code to which the Court refers.

**6.** *See* 11 U.S.C. § 546.

TCB and BTCo. The analysis begins with UCC § 9–103(1)(d)(i).

### UCC § 9–103(1)(d)(i)

■ UCC § 9–103(1)(d)(i) states that:

(d) When collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by Part 3 of this Article to perfect the security interest.

　(i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction or the end of four months after the collateral is brought into this state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected *as against a person who became a purchaser after removal;*

　. . .

(emphasis added).

A security interest becomes unperfected under the UCC's "four month rule" when collateral securing an interest required to be perfected under one state's laws is removed to another state and the secured party then fails to reperfect within four months of removal. However, this loss of perfection, according to the statutory language, only improves the position of "purchaser[s] after removal." *See In re C Tek Software, Inc.*, 117 B.R. 762, 768 (Bankr. D.N.H.1990) (addressing trustee's inability to be a "purchaser"); *Matter of Keystone General, Inc.*, 135 B.R. 275, 281 (Bankr. S.D.Ohio 1991).

In the present case, the parties do not dispute that TCB loaned money to the third party defendants in Mississippi for purposes of financing their 1989 cotton crops. These crops, along with the proceeds thereof, were given as collateral to secure TCB's loan. *See* Security Agreements between TCB and Kenny Weeks, James Mabus, and L.C. Mabus respectively (attached to Affidavits of Tallahatchie County Bank in Support of Plaintiff's Motion for Partial Sum-

mary Judgment, filed October 7, 1991). In the fall of 1989, the cotton was bought by The Julien Company and was shipped from Mississippi to Tennessee and North Carolina where it remained for over four months. At the November 25, 1991 hearing, TCB's attorney stipulated that TCB never filed any financing statements covering its collateral cotton in Tennessee or North Carolina as required by UCC § 9–103(1)(d)(i). *See* Bankers Trust Company's Second Supplemental Memorandum of Law in Support of Its Cross–Motion for Summary Judgment Against Tallahatchie County Bank; Exhibit A at 28–29 (January 21, 1992).

Thus, according to UCC § 9–103(1)(d)(i), TCB lost its *perfected* security interest, as to a "purchaser after removal" of the cotton from Mississippi, due to its failure to file financing statements in Tennessee and North Carolina. The following cases support this conclusion: *United States v. Burnette–Carter Co.*, 575 F.2d 587, 590–92 (6th Cir.1978); *In re Ken Gardner Ford Sales, Inc.*, 41 B.R. 105, 108–09 (Bankr.E.D.Tenn. 1984) (However, UCC § 9–103 subsequently has been amended in Tennessee, and the *Burnette–Carter* and *Gardner* cases did not address the "purchaser after removal" language). Nevertheless, TCB argues that this section of the UCC is preempted by § 1324 of the Food Security Act of 1985 (codified at 7 U.S.C. § 1631).[7] Before addressing this Act, it should be observed that the evidence is missing in this adversary proceeding as to when BTCo acquired its security interests in the cotton subject to this dispute. Therefore, the Court can not draw a final conclusion as to whether BTCo is a "purchaser after removal" under UCC § 9–103(1)(d)(i).

■ An analysis of that issue begins with UCC § 1–201(32) which defines "purchase:"

(32) "Purchase" includes taking by sale, discount, negotiation, mortgage, pledge, lien, issue or re-issue, gift or any other voluntary transaction creating an interest in property.

---

7. Food Security Act, Pub L. No. 99–198, 99 Stat.

1535 (1985). *See also* 9 C.F.R. § 205 *et seq.*

"Purchase" appears to contemplate a voluntary transfer and would include a security interest such as that claimed by BTCo. *See In re MacMillan Petroleum (Arkansas), Inc.,* 115 B.R. 175, 180 (Bankr. W.D.Ark.1990). BTCo has filed proofs of claims in this bankruptcy case, but those claims and their documentation are not before the Court as evidence in this adversary proceeding. In fact, the parties have specifically noted that the validity, extent, and priority of BTCo's security interests are not at issue. UCC § 1–201(33) defines "purchaser" as one "who takes by purchase," referring of course to § 1–201(32). The Court needs to make it clear that the parties have not briefed the issue of whether BTCo is a "purchaser after removal" for purposes of UCC § 9–103(1)(d)(i), and the Court may have assumed a fact not in evidence in its prior April 3 opinion. The Court has been under the impression from numerous pleadings and motions in this complex case that BTCo was asserting prior security interests that attached every time The Julien Company bought cotton or cotton equities.[8] If that is correct, it would seem to follow that BTCo's security interests attached immediately upon The Julien Company's purchase of this cotton in Mississippi and that BTCo could not be a "purchaser after removal" of the cotton from Mississippi to Tennessee and North Carolina. As a result, it would appear that BTCo could not benefit from the application of UCC § 9–103(1)(d)(i) to TCB's failure to file under the UCC in Tennessee and North Carolina. This result, which appears obvious from a reading of the statute, is what lead the Court to its conclusion in the April 3 opinion that BTCo acquired no greater interest than The Julien Company and that BTCo could not defeat TCB on the basis of TCB's failure to comply with UCC § 9–103(1)(d)(i). However, in view of the fact that the parties have not specifically addressed BTCo's status as a "purchaser after removal," the Court will allow the parties an opportunity to submit proof on

this issue and, in the absence of such proof, simply will deny the cross motions for summary judgment as not being dispositive of this issue.[9]

### 7 U.S.C. § 1631

"Congress has specifically attempted to alleviate the burden on and obstruction to interstate commerce in farm products through the Food Security Act, 7 U.S.C. § 1631. The provisions of this statute became effective December 23, 1986." *FDIC v. Bowles Livestock Comm'n Co.,* 739 F.Supp. 1364, 1375 (D.Neb.1990), *rev'd on other grounds,* 937 F.2d 1350 (8th Cir. 1991). The Act includes § 1324 "which statutorily abrogates the widely enacted 'farm products' exception of § 9–307(1) of the Uniform Commercial Code." *Lisco State Bank v. McCombs Ranches, Inc.,* 752 F.Supp. 329, 333 (D.Neb.1990). Section 1324 (codified at 7 U.S.C. § 1631) which is entitled "Protection For Purchasers Of Farm Products' ... was a congressional attempt to eliminate potential exposure of 'purchasers of farm products to double payment liability.'" *Id. See* 7 U.S.C. § 1631(a) (Congressional findings). In its abrogation of the "farm products exception," Congress intended to reallocate the loss from the buyer to the farm products lender when the borrower defaults. *See United States v. Progressive Farmers Mktg. Agency,* 788 F.2d 1327, 1331 (8th Cir.1986).

UCC § 9–307(1), which includes the "farm products exception," states that:

A buyer in ordinary course of business ... *other than a person buying farm products from a person engaged in farming operations* takes free of a security interest created by his seller even though the security interest is perfected and even though the buyer knows of its existence.

---

**8.** *See* UCC § 9–203(1), (2) (explanation of when a security interest attaches and becomes enforceable against the debtor or third parties).

**9.** It should also be noted that evidence is not before the Court in this adversary proceeding on when the security interests attached as to the other Institutional Lenders for whom BTCo has been substituted. *See* footnote 4.

*Id.* (emphasis added).[10]

As previously stated, § 1631 was passed to abrogate this farm products exception. Specifically, § 1631(d) states that:

> [e]xcept as provided in subsection (e) and notwithstanding any other provision of Federal, State, or local law, a buyer who in the ordinary course of business buys a farm product from a seller engaged in farming operations shall take free of a security interest created by the seller, even though the security interest is perfected; and the buyer knows of the existence of such interest.

*Id.* In addition, the Agriculture Committee reported that:

> [t]he bill is intended to preempt state law (specifically the so-called "farm products exception" of the Uniform Commercial Code section 9–307) to the extent necessary to achieve the goals of this legislation. Thus, this Act would preempt state laws that set as conditions for buyer protection of the type provided by the bill requirements that the buyer check public records, obtain no-lien certificates from the farm products sellers, or otherwise seek out the lender and account to that lender for the sale proceeds....

H.R.Rep. No. 271, 99th Cong., 1st Sess., pt. 1, at 110 (1985), U.S.Code Cong. & Admin.News 1985, pp. 1103, 1214.

Therefore, the "farm products exception" no longer exists and federal law (7 U.S.C. § 1631) is controlling on the subject. The Court in *United States v. Walter Dunlap & Sons, Inc.,* 800 F.2d 1232 (3d Cir. 1986) (decided prior to the Food Security Act's effective date of December 23, 1986), held that:

> ... federal ... regulations ... enacted under a general enabling provision, do not constitute the sort of explicit "congressional directive" that will displace the application of state law as the federal rule of decision.... We therefore must heed *Kimbell's [United States v. Kimbell Foods, Inc.,* 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979) ] direction to

"adopt the readymade body of state law as the federal rule of decision until Congress strikes a different accommodation...." 440 U.S. at 740, 99 S.Ct. at 1464. The wisdom of pursuing that approach is demonstrated by the enactment of The Food Security Act of 1985 ... — the type of congressional directive referred to in *Kimbell.*

*Id.* at 1239.

### PREEMPTION

■ The question presented to this Court, however, is whether the "four month rule" for perfecting security interests in multi-state transactions (UCC § 9–103(1)(d)(i)) is preempted by 7 U.S.C. § 1631? This analysis should be considered as the second step of the effect of § 1631, the first step being that § 1631 preempts the "farm products exception" of UCC § 9–307(1). Perfection or lack of perfection has no impact on this first step. However, after affirming that the "farm products exception" is preempted, the Agriculture Committee's House Report, previously quoted, also states that "... the bill [Food Security Act] would not preempt the basic state-law rules on the creation, *perfection,* or priority of security interests." H.R.Rep. No. 271, 99th Cong., 1st Sess., pt. 1, at 110 (1985), U.S.Code Cong. & Admin.News 1985, p. 1214 (emphasis added). *See Lisco State Bank v. McCombs Ranches, Inc.,* 752 F.Supp. at 338. UCC § 9–103(1)(d)(i) is a state law rule dealing with perfection, and therefore, this Court holds that BTCo is correct that UCC § 9–103(1)(d)(i) is not preempted by 7 U.S.C. § 1631. However, this Court disagrees with BTCo regarding the effect of that non-preemption on the case at hand. BTCo claims that if the "four month rule" is not preempted by § 1631, then TCB has lost its perfected security interests. Therefore, according to BTCo, as a holder of unperfected security interests, TCB does not have priority over BTCo's interests. *See* Bankers Trust Company's Second Supplemental Memorandum of Law In Support Of Its

---

**10.** The current version of UCC § 9–307(1) no longer contains the farm products exception in Tennessee; however, the exception remains in the current North Carolina version. *See* Tenn. Code Annot. § 47–9–307(1); N.C.Gen.Stat. § 25–9–307(1).

Cross–Motion For Summary Judgment against Tallahatchie County Bank at 14 (January 21, 1992)

As this Court has already found, TCB did lose its perfected security interests under UCC § 9–103(1)(d)(i) as to "purchaser[s] after removal" by not perfecting in Tennessee or North Carolina within four months. However, its loss of perfection adds nothing to the operation of § 1631. Bringing UCC § 9–103(1)(d)(i) into play after the application of § 1631 does not benefit BTCo in this particular proceeding if BTCo is not a "purchaser after removal." 7 U.S.C. § 1631 is not in conflict with UCC § 9–103 because perfection is irrelevant in the operation of § 1631.

The federal statute clearly states that "... a buyer ... shall take free of a security interest created by the seller, *even though the security interest is perfected;* and the buyer knows of the existence of such interest." 7 U.S.C. § 1631(d) (emphasis added). Therefore, according to § 1631(d), a buyer will take free and clear of a security interest whether or not it is perfected. To the extent that § 1631 conflicts with UCC § 9–312 regarding the priority among the conflicting security interests of BTCo and TCB in the same collateral, this Court notes § 1631(d) specifically states that: "[e]xcept as provided in subsection (e) and notwithstanding any other provision of Federal, State, or local law, a buyer ... shall take free of a security interest ..." *Id.* Thus, if § 1631 conflicts with UCC § 9–312's provisions as they apply to BTCo in this factual scenario and assuming that BTCo is not a "purchaser after removal," § 1631 may then preempt that state law, but only as to "a buyer [The Julien Company and its pre-removal lender BTCo] who in the ordinary course of business buys a *farm product ...*" 7 U.S.C. § 1631(d) (emphasis added). In other words, unless BTCo is a "purchaser after removal" of the cotton from Mississippi, BTCo can hold no better position than the buyer, The Julien Company. That is a conclusion limited to the facts such as are present in this proceeding, recognizing that the general rule is that the states' comprehensive laws on the creation, perfection or priority of security interests in collateral remain the controlling law. *See* H.R.Rep. No. 271, 99th Cong., 1st Sess., pt. 1, at 110. (1985); *compare with Moffat County State Bank v. Producers Livestock Mktg. Assoc.,* 833 F.2d 908 (10th Cir.1987); *Lisco State Bank v. McCombs Ranches, Inc.,* 752 F.Supp. at 334–35, 335 n. 3 (addressing the general effect of 7 U.S.C. § 1631). And, of course, the states' laws would control as to "purchaser[s] after removal" of the collateral to another state.

■ The Julien Company, which was a buyer in the ordinary course of business, bought the cotton from the third party defendants free and clear of TCB's security interests created by the sellers, unless one of the exceptions in § 1631(e) is met. *See* 7 U.S.C. §§ 1631(c)(1) ("buyer in the ordinary course of business" defined), (e).

TCB claims that the conditions in § 1631(e)(2) have been satisfied and that The Julien Company did take subject to its security interests. That section states that:

(e) A buyer of farm products takes subject to a security interest created by the seller if—

(2) in the case of a farm product produced in a State that has established a central filing system—

(A) the buyer has failed to register with the Secretary of State of such State prior to the purchase of farm products; and

(B) the secured party has filed an effective financing statement or notice that covers the farm products being sold; ...

Therefore, three requirements must be met in § 1631(e)(2). First, the state in which the farm product was produced must have established a "central filing system" certified by the Secretary of the U.S.D.A. *See* 7 U.S.C. § 1631(c)(2) ("central filing system" defined). In this case, the cotton collateral in question was produced in Mississippi, and that state established a central filing system on December 24, 1986.

The second requirement is that the buyer must have failed to register with the Secre-

tary of State of that state before purchasing the farm products. TCB claims it is undisputed that The Julien Company did not register with the Mississippi Secretary of State. *See* Memorandum Brief of Tallahatchie County Bank at 3 (Jan. 22, 1992). However, no proof, in the form of an affidavit from the Mississippi Secretary of State or otherwise, has been offered by TCB on this point. The Court therefore requests that the parties either stipulate to this fact or enter proof to meet this requirement. Without this proof the Court will not be in a position to grant summary judgment on the issues raised under § 1631(e).

 Finally, if the first two requirements have been satisfied, the third is that the secured party must have filed an "effective financing statement"[11] or notice that covers the products sold. The statement must be filed with "the Secretary of State of a State by the secured party." 7 U.S.C. § 1631(c)(4)(B). *See FDIC v. Bowles Livestock Comm'n Co.*, 739 F.Supp. at 1376 (Secured party failed to preserve security interest under 7 U.S.C. § 1631(g)(2)(C) or (D) because financing statements were filed with the County Clerk but not with the Secretary of State). TCB has submitted that it did file "effective financing statements" in Mississippi which covered the 1989 cotton crops and proceeds of third party defendants, Kenny Weeks, James Mabus and L.C. Mabus.[12] *See* Financing Statements (attached to Affidavits of Tallahatchie County Bank in Support of Plaintiff's Motion for Partial Summary Judgment, filed October 7, 1991). BTCo, however, claims that TCB failed to list all of the farmers' ASCS farm numbers so as properly to identify all farms on which crops were produced. TCB did not include ASCS farm number 527 on Kenny Weeks'

financing statement, and this farm yielded bales of cotton which were sold to The Julien Company. *See* Joint Memorandum of Law in Opposition to Plaintiff's Motion for Partial Summary Judgment and Bankers Trust Company's Memorandum in Support of Its Cross–Motion for Summary Judgment Against Tallahatchie County Bank at 6 (Nov. 4, 1991); Affidavit of Kenny Weeks in Support of Tallahatchie County Bank's Motion for Partial Summary Judgment, ¶ 2 (Oct. 7, 1991); Financing Statement between Tallahatchie County Bank and Kenny Weeks (attached to Affidavit of Tallahatchie County Bank in Support of Plaintiff's Motion for Partial Summary Judgment) (Oct. 7, 1991). Therefore, these financing statements would be effective only as to the specific cotton collateral and its proceeds produced on the farms listed and described in each farmer's financing statement. *See* 7 U.S.C. § 1631(c)(4)(D)(iv). The Court will grant summary judgment against TCB on the issue of TCB's failure to file an effective financing statement in Mississippi on Kenny Weeks' ASCS farm number 527.

 Thus, this Court holds that if TCB proves that The Julien Company failed to register with the Mississippi Secretary of State pursuant to 7 U.S.C. § 1631(e)(2)(A), then The Julien Company took the cotton subject to the security interests of TCB in the specific cotton collateral and proceeds identified in each third party defendant's financing statement. Further, if it is shown that BTCo's security interests attached prior to removal of the cotton from Mississippi, any security interests which BTCo may have in the cotton collateral and proceeds in question will be subject or junior to TCB's interests under UCC § 9–103(1)(d)(i). However, the Court is not in a position to grant summary judgment until

**11.** *See* 7 U.S.C. § 1631(c)(4) ("effective financing statement" defined).

**12.** This Court notes that 7 U.S.C. § 1631(c)(4)(B) states that the financing statement must be filed with the Secretary of State *of a State* by the secured party. In the case of a multi-state transaction, this Court is not ruling on whether filing in the state to which the farm products have been removed is adequate; however, the

Court does find that filing with the Secretary of State in the state in which the farm products were produced and in which a central filing system is in place is adequate. 7 U.S.C. § 1631(e)(2). *See FDIC v. Bowles Livestock Comm'n. Co.*, 739 F.Supp. at 1376; Brubaker, *Farm Products Collateral: Still a Problem?*, 1987 U.Ill.L.Rev. 241, 268 (1987).

the proof establishes that all requirements of 7 U.S.C. § 1631(e)(2) are met and that BTCo is not a "purchaser after removal" under UCC § 9–103(1)(d)(i).[13]

## CONCLUSION

This Court holds that the Food Security Act of 1985 (codified at 7 U.S.C. § 1631) that does preempt the "farm products exception" in UCC § 9–307(1) nevertheless does not preempt the operation of UCC § 9–103(1)(d)(i) [Tenn.Code Annot. § 47–9–103(1)(d)(i) and N.C.Gen.Stat. § 25–9–103(1)(d)(i) ]. TCB did lose its perfected security interest in the 1989 cotton crops and proceeds of the third party defendants, but this loss only improves the position of a "purchaser after removal" of the goods from Mississippi. The perfection status of TCB's security interest in Tennessee and North Carolina is irrelevant to the operation of the federal statute and to the effectiveness of UCC § 9–103(1)(d)(i) in this proceeding if BTCo is not a "purchaser after removal." Section 1631(d) allows a buyer in the ordinary course of business to buy farm products free from security interests, regardless of perfection, unless § 1631(e) requirements are met. In this case, if the lender, TCB, satisfies all the conditions under § 1631(e)(2), then The Julien Company took subject to TCB's interests in the cotton collateral and proceeds covered in the financing statements filed with the Mississippi Secretary of State. It would necessarily follow that if BTCo's security interests attached upon The Julien Company's purchase in Mississippi, those security interests were then junior to the prior perfection by TCB in Mississippi. Unless BTCo can establish that it later became a "purchaser after removal" under UCC § 9–103(1)(d)(i), it would not benefit from TCB's failure to file in Tennessee and North Carolina. The policy rationale for that conclusion is obvious: BTCo already had constructive knowledge of TCB's perfection in Mississippi.

IT IS THEREFORE ORDERED that a status conference shall be set for July 30, 1992, at 9:30 a.m., in Courtroom 680, 200 Jefferson Avenue, Memphis, Tennessee. Prior to or at that time, the Court will accept further stipulations or documentation regarding 7 U.S.C. § 1631(e)(2) and at that conference, the parties will discuss the particular questions of fact and legal issues left for adjudication at trial, including the critical issue of whether TCB waived its security interests by its alleged participation in prior settlements reached between the third party defendant farmers and BTCo and the Trustee. Further, the Court will hear from the parties on BTCo's status as a "purchaser after removal" under UCC § 9–103(1)(d)(i). If this date is not mutually agreeable for counsel, said counsel may consult with each other and with Carol Smith, the Courtroom Deputy, for an alternate date. If the status conference reveals that the parties are unable to stipulate or offer proof in support of summary judgment on the issues of compliance with 7 U.S.C. § 1631(e)(2) and of BTCo's status as a "purchaser after removal" under UCC § 9–103(1)(d)(i), the Court will set this proceeding for trial.

The Court does grant summary judgment against TCB on the issue of TCB's failure to perfect a security interest in Kenny Weeks' cotton produced on ASCS farm number 527. The Court will not enter a judgment until a final order is entered on all issues.

SO ORDERED.

---

**13.** Each of the Institutional Lenders has filed proofs of claims in this bankruptcy proceeding, and each asserts a perfected security interest in all of the debtor's personal property. The validity, extent and priority of these asserted security interests are not at issue here. *See* footnote 9.