**ALPINE PAPER COMPANY,**
**Plaintiff/Appellant,**

v.

**Statia M. LONTZ, d/b/a Print Prep**
**Network, and PAI Industries, Inc.,**
**Defendants/Respondents.**

**No. 62580.**

Missouri Court of Appeals,
Eastern District,
Division Four.

July 13, 1993.

Michael B. Stern, Richard W. Fischer, St. Louis, for plaintiff/appellant.

Statia M. Lontz, pro se.

Robert J. Selsor, Clayton, for defendants/respondents.

CRAHAN, Judge.

Plaintiff, Alpine Paper Company ("Alpine"), appeals the trial court's judgment for defendants Statia Lontz and PAI Industries ("PAI") in an action for conversion of collateral in which Alpine had a security interest. We reverse the trial court's judgment and enter judgment pursuant to Rule 84.14 in favor of Alpine and against both defendants in the amount of $6,500.00.

It is undisputed that Alpine had a valid perfected security interest in a hydraulic paper cutter owned by Brian and Sherri Bolton and located in the State of Iowa. In October 1991, while the security interest was still perfected, Statia Lontz, acting as a broker, purchased the paper cutter from the Boltons. Without removing the paper cutter from Iowa, Lontz immediately resold it to PAI, a Missouri corporation. PAI made a down payment of 10% of the purchase price and arrangements were made for delivery to PAI, with the place of delivery designated as F.O.B. Dubuque, Iowa. PAI reserved the right to reject the paper cutter if it was not in the condition represented.

Alpine obtained a default judgment against the Boltons and instituted this action against PAI and Lontz. The case was tried without a jury. At trial, defendants argued that Alpine's security interest lapsed due to its failure to re-perfect its security interest in the State of Missouri within four months of the removal of the collateral from Iowa as allegedly required by § 400.9–103(1)(d)(i) RSMo. (Cum.Supp. 1989). Alpine argued that because both defendants purchased the collateral before it was removed to Missouri they took subject to the security interest perfected in Iowa and the security interest did not have to be re-perfected in Missouri to be effective against these defendants. The court found for the defendants without making findings of fact or conclusions of law.

■ In a court tried case the judgment of the trial court will be sustained unless there is no substantial evidence to support it, unless it is against the weight of the evidence, unless it erroneously declares the law, or unless it erroneously applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). This cause of action involves the sale of goods which is governed by the Uniform Commercial Code ("U.C.C.") as adopted by both Missouri and Iowa. Under Iowa Code section 554.9201 "except as otherwise provided by this chapter, a security agreement is effective according to its terms between the parties, against purchasers of the collateral, and against creditors." However, under section 400.9–103(1)(d) RSMo. (Cum.Supp. 1989),

> [w]hen collateral is brought into and kept in this state while subject to a security interest perfected under the law of the jurisdiction from which the collateral was removed, the security interest remains perfected, but if action is required by part 3 of this article to perfect the security interest,
>
> (i) if the action is not taken before the expiration of the period of perfection in the other jurisdiction *or the end of four months after the collateral is brought into the state, whichever period first expires, the security interest becomes unperfected at the end of that period and is thereafter deemed to have been unperfected as against a person who became a purchaser after removal;* ...

(Emphasis added). The plain meaning of § 9–103(1)(d)(i) dictates that a security interest does not become unperfected against a person who purchases the property before it was moved out of state. *Union Federal Sav. v. INB Banking Co.*, 582 N.E.2d 426, 430 (Ind.App.1991). Therefore, the ultimate question is whether PAI and Lontz were "purchasers after removal."

■ Lontz did not file a brief in this court and there is nothing in the record to support a finding that she purchased the paper cutter after it was removed from Iowa. Lontz admitted that she purchased the paper cutter from the Boltons while it was located in Iowa and then sold it to PAI before removing it to Missouri. The fact that Alpine had a valid security interest in Iowa is uncontroverted. Therefore, Lontz took subject to that security interest. Iowa Code § 554.9201. The judgment of the trial court must therefore be reversed with respect to defendant Lontz.

■ PAI claims that because it merely gave a down payment to Lontz while the paper cutter was in Iowa and reserved the right to reject the paper cutter if it were not as represented, it did not purchase the paper cutter until it was removed to Missouri. PAI further argues that an invoice standing alone is not evidence of title and no other evidence was adduced showing they obtained title in Iowa. These contentions do not support a finding that PAI was a "purchaser after removal."

Although this question has not been addressed by Missouri courts, it has been addressed in other jurisdictions which have adopted the identical U.C.C. provisions. In order to determine when the defendant became a purchaser, it is necessary to refer to the U.C.C. definition of "purchase" and "purchaser." *INB Banking, supra,* 582 N.E.2d at 429; *see also, Prairie State Bank v. I.R.S.,* 155 Ariz. 219, 745 P.2d 966, 970 (Ariz.App.1987); *In re Julien Co.,* 141 B.R. 384 (W.D.Tenn.1992). A "purchaser" is a person who takes by purchase. § 400.1–201(33) RSMo. (1986). Under § 400.1–201(32) RSMo. (1986), "purchase" is defined as "taking by sale, discount, negotiation, mortgage, pledge, lien, issue or reissue, gift, *or any other voluntary transaction creating an interest in property.*" (emphasis added).

■ The payment of the purchase price does not control when a buyer acquires rights in the collateral sufficient to support the attachment of its creditor's security interest. *INB Banking,* 582 N.E.2d at 430. Further, title to collateral is of no consequence when determining the parties

rights, obligations and remedies under Article 9. § 400.9–202 RSMo. (1986). *Community Bank of Chillicothe v. Campbell*, 813 S.W.2d 40, 43 (Mo.App.1991); *INB Banking, supra*, 582 N.E.2d at 430.

Under the statutory definition of "purchaser," PAI must be deemed to have purchased the paper cutter before it was removed from Iowa. PAI acquired an interest in the paper cutter when it made the down payment. This was a voluntary transaction that gave PAI the right to ownership. Further, the risk of loss passed to PAI in Dubuque, Iowa as evidenced by the F.O.B. Dubuque, Iowa language in the invoice. § 400.2–319 RSMo. (1986). The fact that PAI reserved the right to reject the paper cutter for nonconformity and did not hold title to the paper cutter does not lead to a determination that the purchase took place in Missouri. The right to reject for non-conformance with the contract is expressly provided by statute and is not determinative of PAI's status as a "purchaser." §§ 400.2–601(a); 400.1–201(33) RSMo. (Cum.Supp.1989). Moreover, the paper cutter was removed to Missouri pursuant to a sale agreement. Lontz testified that she would not have purchased the paper cutter had PAI not contracted to buy it.

■ Interpretation of the U.C.C. must be made with an eye toward promoting the underlying purpose and policies of the statute. *First Nat. Bank v. John Deere Co.*, 409 N.W.2d 664, 666 (S.D.1987). The positions of the parties and the purpose of the four month rule must be considered when making this determination. The four month rule was designed to protect creditors from absconding debtors. It also protects third persons in the second state where it would be impractical to charge them with notice of a filing in the first state. *Id.* It is not intended to protect a third party who was not an innocent party and was involved before the removal. *In re Halmar Distributors, Inc.*, 968 F.2d 121, 125 (1st Cir.1992).

Both Lontz and PAI admitted that they knew the paper cutter was located in Iowa at the time of purchase. They knew that the proper place to look for any encumbrances on the property would be in Iowa. Therefore, we find no reason not to impute knowledge of Alpine's security interest in the property to PAI. This is not a situation where the four month rule was meant to apply. There was no absconding debtor and the purchaser was not innocent and unknowing. "When the sale itself results in an interstate transfer of collateral, the secured party does not need to refile. Otherwise, any out-of-state purchaser would be able to defeat a valid and perfected security interest." *In re Keystone General, Inc.*, 135 B.R. 275 (S.D. OH 1991).

■ Finally, PAI claims: 1) Alpine can not use the Missouri Courts because it is not licensed to do business in Missouri as required by § 351.572.1 RSMo. (Cum.Supp. 1990) and 2) Alpine elected conversion as its sole remedy which is not applicable to PAI. Both contentions must be deemed abandoned as PAI failed to offer any legal support in its brief. Rule 84.13(a). Further, exercising our discretion to review the points *ex gratia*, we find these contentions are not supported by the law or the record. With respect to the first contention, under § 351.572.2(6) RSMo. (Cum.Supp.1990) a foreign corporation need not obtain a Certificate of Authority from the Secretary of State to secure or collect debts or to enforce security interests in property securing the debt. As for PAI's second claim, Alpine moved for an amendment to the pleadings to add the claim for conversion against PAI. PAI argued that the amendment should not be allowed and the case should be dismissed. The court overruled PAI's motion. Furthermore, the conversion remedy is appropriate against PAI in this instance. *See Fricke v. Valley Production Credit Ass'n*, 778 S.W.2d 829, 833 (Mo.App.1989) ("An action for conversion can be had against any of the transferees of the collateral so converted.").

■ Thus, we conclude the trial court erred as a matter of law in entering judg-

ment for the defendants. This court has the authority to enter the judgment that should have been entered by the trial court. Rule 84.14. The measure of damages in an action for conversion of personal property is generally the fair market value of the property at the time and place of the conversion. *Lacks v. R. Rowland & Co., Inc.,* 718 S.W.2d 513, 520 (Mo.App.1986). Because the value of the property was undisputed at trial, we reverse and enter judgment for the plaintiff and against both defendants in the amount of $6,500.00.

CARL R. GAERTNER, P.J., and CRANE, J., concur.